IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIAN DAIN MCDONALD,  )
                        )  Civil Action No. 15 – 138J
        Petitioner,     )
                        )
        v.              )
                        )  Magistrate Judge Lisa Pupo Lenihan
THERESA DELBALSO,       )
*Superintendent*, ESQ. WILLIAM J. )
HIGGINS, *District Attorney*, and )
KATHLEEN KANE, *Attorney General* )
*of the State*,         )
                        )
        Respondents.    )

# MEMORANDUM OPINION

### A. Background

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Petitioner Julian D. McDonald ("Petitioner") pursuant to 28 U.S.C.§ 2254, wherein he challenges his September 9, 2010 conviction out of Bedford County, Pennsylvania at Docket Number CP-05-CR-0000328-2009, after a jury found him guilty of Possession of a Controlled Substance with the Intent to Deliver, Conspiracy to Deliver a Controlled Substance, and Possession of Drug Paraphernalia.[1] For these crimes, he was sentenced to an aggregate sentence of six to eleven years of incarceration on October 18, 2010.[2]

---

[1] Petitioner was tried with his brother and co-defendant, Michael McDonald. The charges stemmed from the discovery of 177 pounds of marijuana in the trunk of a rental car that was driven by Michael and pulled over for tailgating a mini-van on August 1, 2009.

1

Petitioner appealed his judgment of sentence, and his direct appeal proceedings ended with the Pennsylvania Supreme Court denying his Petition for Allowance of Appeal ("PAA") on February 23, 2012.

Next, Petitioner filed a petition seeking relief under Pennsylvania's Post Conviction Relief Act ("PCRA") on March 15, 2012. On June 27, 2013, a hearing was held on his PCRA petition, but the petition was later denied in a Memorandum Opinion dated September 23, 2013. After the Pennsylvania Superior Court affirmed the PCRA court's denial of relief, the Pennsylvania Supreme Court denied his PAA on April 24, 2015.

Petitioner filed the instant Petition for Writ of Habeas Corpus on May 8, 2015, to which the Respondents filed their Response on September 21, 2015. Petitioner then filed a Response in Opposition to that Response on October 13, 2015. For the following reasons, the Petition will be denied.

## B. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court of the United States, in Williams v. Taylor, 529 U.S. 362 (2000), discussed the analysis required by § 2254(d)(1):

> [Under the "contrary to" clause], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a

---

[2] The Court takes judicial notice that Petitioner was released from the custody of the Pennsylvania Department of Corrections on August 25, 2016, and is currently on bond awaiting deportation proceedings.

question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 1498. The Third Circuit Court of Appeals, consistent with the Williams v. Taylor interpretation, set forth in Matteo v. Superintendent, SCI-Albion, 171 F.3d 877 (3d Cir. 1999), *cert*. *denied* 528 U.S. 824 (1999), a two-tier approach to reviewing § 2254(d)(1) issues:

> First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." O'Brien [v. Dubois], 145 F.3d [16], 24-25 [1st Cir. 1998)]. In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application" of Supreme Court precedent; that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted.

Id. at 891. The phrase "clearly established Federal law," as the term is used in Section 2254(d)(1) is restricted "to the holdings, as opposed to the dicta of [the United States Supreme Court] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 365. Under the "unreasonable application" clause,

> a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo* evaluation of the constitutional claim on the merits. *See* Tucker v. Superintendent Graterford SCI, 677 F. App'x 768, 776 (3d Cir. 2017) (citing Panetti v. Quarterman, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must

3

then resolve the claim without the deference AEDPA otherwise requires."). Indeed, the Third Circuit recently explained that,

> [w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient. That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," Williams, 529 U.S. at 389, 120 S.Ct. 1495. *See also* Horn v. Banks, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"). Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred. *See* Lafler v. Cooper, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under § 2254(d)(2), a state court decision is based on an "unreasonable determination of the facts" if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding," which requires review of whether there was sufficient evidence to support the state court's factual findings. *See* Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, § 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that

the petitioner can rebut only by clear and convincing evidence. Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004).

**C. Discussion**

Petitioner presents two claims for review in his Petition. His first claim is that the PCRA court erred in concluding that the after discovered evidence offered by his brother, and co-defendant, did not justify a new trial. His second claim is that the PCRA court erred in denying relief on his ineffective assistance of trial counsel claim.

**1. After discovered evidence claim**

In his PCRA petition, Petitioner argued that he was entitled to a new trial based on newly discovered evidence pursuant to 42 Pa. C.S.A. § 9543(a)(2)(vi), which requires a petitioner to plead and prove by a preponderance of the evidence that his conviction and sentence resulted from: "The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." The newly discovered evidence that Petitioner relied on to support his claim was an affidavit from his brother and co-defendant, Michael, which stated:

> I Michael D. Mcdonald swear that on August 1, 2009 [I] acted alone in the criminal activity that i [sic] am now incarcerated for, furthermore it is my sworn statement that [appellant] had no knowledge of the events that took place on the above mentioned day. It is my sworn testimony that I Michael Mcdonald acted alone and in no way conspired with [appellant].

(Super. Ct. Memorandum 10/14/14; ECF No. 7-8, p.5) (quoting affidavit of Michael Dain McDonald, 3/11/13 at 1.) At the PCRA hearing held on June 27, 2013, Michael McDonald testified that the drugs were his and that Petitioner had no idea that they were in the car. Id. (citing Notes of testimony, 6/27/13 at 14.) When asked why he waited until March 11, 2013 to say something, Michael testified that it was because he was scared. Id., p.6 (citing Notes of

5

testimony, 6/27/13 at 15.) According to Michael, he did not make this information available to Petitioner until March 2013 because:

> My - - since I've been incarcerated, it's been eating me alive. It's just now, I really, really come to me to come out with the truth. Because it's just been me holding that in. I couldn't do it no [sic] more. I just, I just couldn't because he didn't have nothing [sic] to do with this and at that point, that the time I gave up and I just say, I'm just going to let it out. I don't know, so.

Id. (quoting Notes of testimony, 6/27/13 at 18-19.)

The PCRA court found that Michael McDonald's testimony was not credible because he had "nothing to lose" having already been convicted and sentenced for the crime. (PCRA Memorandum Opinion 9/23/13; ECF No. 7-7, p.4.) The court further found Michael McDonald's confession "unpersuasive if not simply unbelievable when considering the [Petitioner] had previously confessed to Magisterial District Judge Bingham that 'he was a marijuana smoker in a frequent capacity,' 'that he was fully responsible for this crime,' and 'that his brother, Michael, had no idea about anything,' and 'he claimed all luggage in the vehicle.'" Id. (quoting Court Transcript 128.) With respect to its classification as after-discovered evidence, the PCRA court stated that it was not because "[Petitioner] would have known, after the arrest, whether it was he or his brother who had initially picked up the car and therefore, more likely than not, know that there was a large quantity of marijuana stored in the trunk." Id.

The Superior Court agreed on appeal stating that Michael's affidavit was not newly discovered evidence "in any traditional sense" because "[Petitioner] knew from day one whether or not he was aware of the marijuana in the trunk of the car." (Super. Ct. Memorandum, 10/14/14; ECF No. 7-8, p.7.) Additionally, it noted that either Michael or Petitioner was lying given the inculpatory statements Petitioner made to the magisterial district judge at arraignment. Id., p.9. By March 2013, both brothers had taken sole responsibility for the crime and claimed

6

that the other brother knew nothing. Id. The Superior Court thus concluded that the PCRA court did not err in finding Michael's affidavit unbelievable and denying Petitioner's newly discovered evidence claim. Id.

As previously noted, Petitioner raised this claim before the PCRA court under 42 Pa. C.S.A. § 9543(a)(2)(vi), a provision of the PCRA that is meant to address claims of actual innocence based on newly discovered evidence. However, this provision of the PCRA does not have a comparable counterpart in the federal habeas statute. "The [United States] Supreme Court has yet to decide whether a prisoner can obtain habeas relief based on a freestanding claim of actual innocence, having left the matter open time and again." Bruce v. Warden Lewisburg USP, 868 F.3d 170, 183 (3d Cir. 2017) (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993); House v. Bell, 547 U.S. 518, 554-55 (2006); District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 71-72 (2009)). Instead, the Supreme Court has held that a claim of actual innocence in a federal habeas proceeding "if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or[] . . . expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). Here, Petitioner does not assert a procedural or time bar but merely seeks a retrial based on his brother's affidavit and testimony at the PCRA hearing. Without more, this claim is not cognizable under 28 U.S.C. § 2254.

Nevertheless, Petitioner has not met the extremely difficult standard that a petitioner must meet to overcome a procedural bar under the basis of actual innocence. In McQuiggin, the Supreme Court repeatedly emphasized that "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." 133 S. Ct. at 1928

(quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  There is no question that Petitioner has not met that threshold here.

Finally, even if this claim was cognizable in this federal habeas case, it would be denied. The PCRA court denied the claim on its merits, and therefore this Court's review of it would be governed by AEDPA's standard of review, which is codified at 28 U.S.C. § 2254(d). Furthermore, AEDPA requires that a determination of a factual issue made by a state court shall be presumed correct and that the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Reviewing this claim through AEDPA's deferential standards of review, this Court must conclude that is has no merit.  This Court is bound by the PCRA court's determination that Michael McDonald's confession lacked credibility, and Petitioner has not rebutted that presumption of correctness through clear and convincing evidence.  For this reason, Petitioner's claim fails on the merits.  It also fails because Petitioner has not demonstrated that the state court's adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

### 2. Ineffective assistance of counsel claim

Petitioner's second claim is that counsel was ineffective pursuant to Strickland v. Washington, 466 U.S. 668 (1984), for failing to inform him that he could be deported if found guilty at trial.  In his PCRA petition, Petitioner relied on Padilla v. Kentucky, 559 U.S. 356 (2010), in which the United States Supreme Court held that counsel must inform his client

whether his plea carries a risk of deportation. However, the Superior Court recognized that Petitioner's reliance on Padilla was misplaced because Petitioner did not enter a guilty plea. (Super Ct. Memorandum, 10/14/14; ECF No. 7-8, p.13.) Petitioner argued that "without knowing about the potential for deportation, [he] could not make a knowing and voluntary decision whether to go to trial or try to negotiate a plea." Id. (citing Appellant's brief at 17.) He argued that "if he had known he could be deported for a felony drug conviction, he could have tried to negotiate a plea to a lesser, non-deportable offense." Id.

In finding that the PCRA court did not err in denying this claim, the Superior Court explained that

> . . . by taking a plea, Padilla was exposing himself to certain deportation. By exercising his right to a jury trial, appellant did not face the certainty of being deported. He could conceivably have been found not guilty. In addition, appellant has a constitutional right to a jury trial but not to enter a plea. The Commonwealth can force a trial if it chooses. Appellant has cited no case law for the proposition that the holding of Padilla extends to cases where the defendant is found guilty after a jury trial, and we are aware of none.

(Super Ct. Memorandum, 10/14/14; ECF No. 7-8, pp.13-14.)

In this case, it is clear that the PCRA court's decision was not contrary to nor an unreasonable application of Padilla, Strickland or any other United States Supreme Court precedent. Petitioner did not plead guilty so Padilla is inapplicable, and the only way Petitioner could have conceivably avoided certain deportation consequences was to go to trial. Assuming Petitioner's allegation about his attorney is true, even if he were informed of the deportation consequences of a conviction, whether it be by pleading guilty or convicted by a jury, he would have most certainly taken his chances with the jury, which he did. Petitioner has not, and cannot, meet his burden under the AEDPA and therefore habeas relief will be denied on this claim.

9

### D. Certificate of Appealability

A court should issue a Certificate of Appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, this Court should not issue a Certificate of Appealability.

Dated: March 9, 2018.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIAN DAIN MCDONALD, | Civil Action No. 15 – 138J |
| Petitioner, | |
| v. | |
| | Magistrate Judge Lisa Pupo Lenihan |
| THERESA DELBALSO, *Superintendent*, ESQ. WILLIAM J. HIGGINS, *District Attorney*, and KATHLEEN KANE, *Attorney General of the State*, | |
| Respondents. | |

## **ORDER**

**AND NOW**, this 9th day of March, 2018, and for the reasons stated in this Court's Memorandum Opinion filed contemporaneously herewith,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1) is denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Julian Dain McDonald
JU-7758
7903 Bayard Street
Philadelphia, PA  19150

Counsel for Respondents
(*Via CM/ECF Electronic Mail*)